INDIANA AND MICHIGAN ELECTRIC COMPANY *v.*
SHELBY SCHNUCK, ET AL.

[No. 1271S387. Filed July 20, 1973.]

*Frank E. Gilkison, White, Haymond, Pierce, Beasley &
Gilkison,* of Muncie, *Paul F. Mason,* of Rockport, for appellant.

*John L. Carroll, Charles C. Griffith,* of Evansville, for
appellees.

ARTERBURN, C.J.*—This case arose upon the complaint of
Indiana & Michigan Electric Company, an Indiana corporation
having the power of eminent domain, to condemn an easement
of a width of approximately 200 feet over real estate owned
by the Appellee, Shelby Schnuck and in which the Town
of Santa Claus, Indiana, claimed a contractual interest.
The land in question is located in Spencer County, Indiana.

---

* This case was distributed to the writer of this opinion on June
27, 1973.

The condemnation was sought by the electric company for the purpose of building an electrical transmission line from a generating plant which was to be located in Henderson County, Kentucky. The transmission line was to run in a generally northeasterly direction from the proposed generating plant to the company's Jefferson substation west of Madison, Indiana. The complaint for appropriation was filed in the Spencer Circuit Court on June 9, 1970. The defendants filed objections, and trial was had before the Honorable Lester Nixon, Special Judge, who sustained the defendant's objections and entered judgment accordingly denying the condemnation.

The main issue in this case is whether the appellant electric company may condemn an easement across land claimed to have been purchased by the Town of Santa Claus from the owner Shelby Schnuck. The evidence discloses that the Town intends to operate a municipal airport on the land in the future. The Appellees, both the original vendor and the Town of Santa Claus, contend that the Indiana & Michigan Electric Company has no intention of constructing a transmission line over the land within the reasonable future. The trial court agreed with the landowner and the Town and denied the electric company's right of condemnation.

Both parties join issue, in the main, as to which of two entities, each enjoying the power of eminent domain, has a priority in these circumstances. It is admitted that from the nature of the easement sought by the power company the land in question could not simultaneously be used as a municipal airport. However, we do not think it becomes necessary to resolve the issues presented on that basis. Rather, the crucial issue is whether the evidence is sufficient to sustain the trial court's denial of the right of condemnation.

The electric company contends that the Town has no real interest in the disputed land, and therefore no standing to oppose the company's condemnation. It points out that the Town has no aviation commission which, under the statute, IC 1971, 19-6-1-2, [*Burns' Ind. Stat. Ann.*

§ 14-413 (1972 Supp.)], is the only municipal body empowered to make a purchase of land for an airport. The company also asserts that the Town never received prior approval for the proposed airport from the State Aeronautics Commission, thereby violating the statute. IC 1971, 19-6-1-6, [*Burns' Ind. Stat. Ann.* § 14-417 (1964 Repl.)]. The Appellant further suggests that the Town did not have a valid contract for the purchase of the land in question; that its claim is based, at most, only on a conditional sales contract with Shelby Schnuck, which the Appellant alleges is void. There are other claimed defects in the position of the Town which we need not note since we are of the view that the right to maintain the condemnation action in this case must fall unless a valid case is made against the landowner Shelby Schnuck who is a party defendant and an Appellee. It must be borne in mind that in analyzing this question we are governed by several well-settled principles of appellate review. The power company is appealing the trial court's denial of its right of condemnation. Thus, the utility is appealing from a negative judgment. If there is any evidence to sustain the judgment of the trial court, this court must affirm. The trial court was presented with a question of fact; namely, whether or not the power company had an immediate need or a fair and reasonable future need for the property in question. *Country Estates, Inc.* v. *Northern Indiana Public Service Company* (1970), 254 Ind. 108, 258 N. E. 2d 54; *Meyer* v. *Northern Indiana Public Service Company* (1970), 254 Ind. 112, 258 N. E. 2d 57. We believe that there was evidence in the record from which the trial court could reasonably have concluded that the electric company was attempting to condemn, not for a future use which was fairly and reasonably needed, but rather based upon their speculation as to what they might want to do in the future. The evidence is not without conflict in this regard. But, it is well-settled that this court will not weigh conflicting evidence nor resolve questions concerning the credibility of witnesses. We may consider only that evidence most favorable to the prevailing party together with all

reasonable inferences to be drawn therefrom, and if from that viewpoint there is evidence of probative value to sustain the judgment of the trial court, that judgment will not be disturbed. *Langford* v. *Anderson Baking Company* (1970), 146 Ind. App. 677, 258 N. E. 2d 60. *Griffin* v. *Hubbell* (1937), 212 Ind. 684, 11 N. E. 2d 136. See also *Cox* v. *Schlachter* (1970), 147 Ind. App. 530, 262 N. E. 2d 550; *Winkler* v. *Winkler* (1969), 252 Ind. 136, 246 N. E. 2d 375; *City of Indianapolis* v. *Pollard* (1960), 241 Ind. 66, 169 N. E. 2d 405. A general judgment is presumed to be based upon findings supported by the evidence. *Gilot* v. *Walsh* (1968), 142 Ind. App. 628, 236 N. E. 2d 607. Here, no request was made for special findings so the finding must be treated as general, and if the action of the trial court is sustainable on any theory, it must be affirmed. *Lewis* v. *Burke* (1968), 143 Ind. App. 696, 242 N. E. 2d 382; *Ross* v. *Review Board of Indiana Employment Security Division* (1962), 243 Ind. 61, 182 N. E. 2d 585.

A review of the evidence shows that the proposed transmission line was to be used in connection with a generating plant to be built at Henderson, Kentucky. Yet the evidence is uncontradicted that the Indiana & Michigan Electric Company had not, at the time of trial, taken any legal action with respect to the acquisition of a site for the building of such a plant. There is evidence suggesting that it might be many years before the proposed line would be used in that connection. The electric company also urges that the proposed line is desired to hook up with other electric companies, but the evidence is clearly in conflict as to whether such a line is immediately necessary over the particular route proposed. In addition, there is a great deal of evidence of the needs of the American Electric Power Company of which the Indiana & Michigan Company is a subsidiary, but American Electric Power is not a party plaintiff in this case. Indiana & Michigan cannot stand upon the needs of its parent corporation, but must, instead, carry the burden of proof on the basis

of its own individual needs. The record contains the deposition of Gregory S. Vassell, assistant vice president and chief planning engineer of American Electric Power Company, which admits the following facts: 1. No decision has been made as of the time of the deposition as to whether or not any construction would ever take place at the Geneva site to which the proposed transmission line would connect. 2. No specific decision as to the precise timing of the development site has been made. 3. No additional sites have been acquired within a 200 mile radius of Henderson County, Kentucky, for power plant development. 4. If the Jefferson-Henderson line were used for the purpose of interconnecting systems it would not link up at the Geneva site initially and may go beyond a 200 mile radius of the Henderson County site. 5. A decision of the board of directors of American Electric Power Company would be necessary as to whether or not a plant the size of the one proposed at Geneva would be required, but no decision has been made as to actually proceeding to the development of the plant site. 6. A statement in a letter from an officer of American Electric Power Company stating that the decision as to whether the site would ever be used at Geneva, Kentucky would not be made earlier than 1973 and perhaps much later, was still true as of the date of Mr. Vassell's deposition. 7. It could conceivably happen that the Geneva site might not ever be used for power plant development. 8. The next plant of American Electric Power Company will not be in Henderson County. 9. No agreements have been made with any other power companies for interconnection with the proposed Jefferson-Henderson line. 10. The interconection proposed by Mr. Vassell would run to TVA's Paradise power plant which would not require a line being built through Spencer County, Indiana. 11. No decision has been made to connect the transmission line to the Paradise site. 12. The cost per mile to the Appellant in building a transmission line such as the possible one suggested would

be in the order of $200,000 per mile. 13. It would require 160 miles of line for construction between the Jefferson site and the Geneva site and only about 40 or 50 miles of line to connect the Jefferson site with the Paradise site. 14. There is a possibility that the Geneva site might never be used for a power plant. 15. No decision by the board of directors has been made with regard to laying a transmission line connection to other systems. 16. It may be as much as 10 years from the time that any land is actually acquired until construction might be completed. 17. A determination regarding the capacity of the Geneva site will not be made until 1973, at the earliest, and it may be deferred at that time. 18. The telegram attached as Exhibit #1 to the Vassell deposition states that American Electric Power does not have any plans, either specific or preliminary, for the development of the Henderson site. Mr. Vassell vouched for the truthfulness of this telegram.

We believe that the trial court could reasonably have found, after having heard all the evidence, that the Appellant was engaged in the same kind of speculation as was evidenced in the cases of *Meyer* v. *Northern Indiana Public Service Company* (1970), 254 Ind. 112, 258 N. E. 2d 57, and *Country Estates, Inc.* v. *Northern Indiana Public Service Company* (1970), 254 Ind. 108, 258 N. E. 2d 54. The decision of the trial court is clearly sustainable on the theory that the power company has no present immediate need, nor any fair and reasonable future need for the real estate sought to be acquired. These were issues of fact determined by the trial court. The court had substantial evidence of probative value in the testimony of one of the officers of the power company itself. The Appellant is asking this court to substitute its judgment for that of the trial court in a case where the evidence is in conflict. This we decline to do. When appealing from a negative judgment, a party has a heavy burden to establish to the satisfaction of the reviewing court that

there was no basis in fact for the judgment rendered. The Appellant has failed to meet that burden.

For the reasons stated, we feel that the judgment of the trial court denying the condemnation of land in which Shelby Schnuck has an interest is sustained by the evidence. It follows, therefore, that the Appellant failed to make out a case for condemnation against the Town of Santa Claus, notwithstanding the question whether the Town had any standing with respect to title or other substantial interest in the disputed real estate.

Therefore, the judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported in 298 N. E. 2d 436.